******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DAVID MARKATOS ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NEW CANAAN
## (SC 21155)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiffs, on the granting of certification, appealed from the trial court's judgment dismissing their appeal from the decision of the named defendant, the Zoning Board of Appeals of the Town of New Canaan, which had rejected the plaintiffs' challenge to the town zoning officer's issuance of a zoning permit that allowed the intervening defendant G Co. to renovate the interior of a building on its property. The town planning and zoning commission had previously approved a special permit that allowed G Co. to have a religious institution on its property. The special permit was later amended to authorize additional principal uses for the property, subject to certain enumerated conditions. Condition six prohibited any "material change" in the "approved use" of the property, or the "intensification" of any use, unless specifically authorized. Condition thirty permitted an existing dwelling on the property to be used as an operations center. G Co. subsequently obtained a zoning permit that authorized renovations to the operations center, including the subdivision of existing garage and open space to create additional offices, expansion of a preexisting office, and the conversion of a closet into a bathroom. The plaintiffs, who were abutting landowners, then instituted a challenge to the issuance of the zoning permit with the zoning board, claiming that the authorized renovations to the operation center were not permitted under conditions six and thirty of the amended special permit. The zoning board rejected the plaintiffs' challenge, and the plaintiffs filed an administrative appeal with the trial court. The trial court did not initially rule on the merits of the plaintiffs' appeal but, rather, remanded the matter to the zoning board to consult with the planning and zoning commission in order to determine whether the approved renovations to the operations center constituted an improper change in or intensification of any use delineated in the amended special permit. On remand, the zoning board consulted with the planning and zoning commission and again rejected the plaintiffs' challenge to the issuance of the zoning permit. Thereafter, the trial court decided the merits of the plaintiffs' administrative appeal, concluding that there was substantial evidence in the record to support the zoning board's decision, and dismissed the appeal. On appeal from the trial court's judgment, the plaintiffs claimed, inter alia, that the zoning board's decision was not supported by substantial evidence and that the trial court's initial order remanding the matter to the zoning board was improper. *Held*:

The trial court properly dismissed the plaintiffs' administrative appeal because, even if this court assumed without deciding that it was improper for the trial court to remand the matter for the zoning board to consult with

the planning and zoning commission, there was substantial evidence that was presented during the underlying proceedings before the zoning board to support the board's original decision to reject the plaintiffs' challenge to the issuance of the zoning permit.

Although the zoning board did not articulate on the record the basis for its original decision to reject the plaintiffs' challenge to the issuance of the zoning permit, it was evident that the plaintiffs' challenge was premised on their claim that the approved renovations violated conditions six and thirty of the amended special permit and that the zoning board's rejection of the plaintiffs' challenge was predicated on its conclusion that those conditions did not prohibit such renovations.

In concluding that the plain language of condition six of the amended special permit contemplated an inquiry into whether there had been either a significant change in the character of the approved use of the property or an increase or strengthening in the degree of any use, this court rejected the plaintiffs' claim that the term "intensification" in condition six should be read to encompass even a modest or minor change to an approved use.

Moreover, in concluding that there was substantial evidence in the record to support the board's original decision that the approved renovations did not violate conditions six and thirty, this court observed that there was sufficient evidence for the board to conclude that the issuance of the zoning permit did not change the character of the approved use of the operations center and that there was no increase or strengthening in the degree of its use for security and administrative purposes.

Specifically, the evidence indicated that the renovations would not cause the size of the physical structure of the operations center to increase, would not change the building's exterior or physical footprint, and would not result in a change in the number of building occupants, employees, or parking spaces.

Argued April 9—officially released July 21, 2026

*Procedural History*

Appeal from the decision of the named defendant upholding the decision of the town zoning enforcement officer to issue a zoning permit for the renovation of certain property as office space, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the judicial district of Hartford, Land Use Litigation Docket, where the court, *Hon. Marshall K. Berger, Jr.*, judge trial referee, granted the motion to intervene filed by Grace Farms Foundation, Inc.; thereafter, the court, *Hon. Marshall K. Berger, Jr.*, judge trial referee, remanded the case to the named defendant

for further proceedings and denied the motion to intervene filed by Timothy J. Curt et al., and the proposed intervenors, on the granting of certification, appealed; subsequently, this court upheld the denial of the motion to intervene filed by Timothy J. Curt et al.; thereafter, the named defendant again upheld the decision of the town zoning enforcement officer to issue the zoning permit; subsequently, the court, *Budzik, J.*, rendered judgment dismissing the plaintiffs' appeal, from which the plaintiffs, on the granting of certification, appealed. *Affirmed.*

*Amy E. Souchuns*, for the appellants (plaintiffs).

*Matthew L. Studer*, with whom, on the brief, was *Peter V. Gelderman*, for the appellee (named defendant).

*Brian R. Smith*, with whom were *Diana E. Neeves* and, on the brief, *Ryan D. Hoyler* and *Scott T. Garosshen*, for the appellee (intervening defendant Grace Farms Foundation, Inc.).

*Opinion*

DANNEHY, J. This appeal arises from a prolonged dispute over the use of a residentially zoned parcel of real property located in the town of New Canaan (town). The plaintiffs, David Markatos and Jennifer Holme, originally appealed to the Superior Court from a 2019 decision of the named defendant, the Zoning Board of Appeals of the Town of New Canaan (board), denying their challenge to a zoning permit issued by the town's zoning enforcement officer,[1] allowing the defendant Grace Farms Foundation, Inc. (Grace Farms), to renovate the interior of a building on its property. The plaintiffs claimed that the conditions in a 2017 special permit (2017

---

[1] Although General Statutes § 8-3 refers to the individual who enforces the zoning regulations as a "zoning enforcement officer," the New Canaan Zoning Regulations use the term "zoning inspector." See New Canaan Zoning Regs., art. 2, § 2.2. The parties, however, use the terms "zoning inspector" and "zoning enforcement officer" interchangeably in their briefs to this court. We refer to this individual as the "zoning enforcement officer" throughout the opinion.

special permit) prohibited Grace Farms from making the renovations approved by the zoning enforcement officer. Instead of ruling on the merits of the plaintiffs' appeal, the trial court remanded the matter to the board, directing it to consult with the Planning and Zoning Commission of the Town of New Canaan (commission) regarding the interpretation of Grace Farms' 2017 special permit. In so doing, the trial court considered the documents, transcripts, and memoranda produced during the underlying proceedings before the board (2019 record). Following the trial court's remand order, the board reconvened, consulted with the commission, and again denied the plaintiffs' challenge to the issuance of the zoning permit. The Superior Court ultimately dismissed the plaintiffs' appeal from the board's decision, concluding that there was substantial evidence in the record to support the board's conclusions and, accordingly, dismissed their appeal.

The plaintiffs now appeal from the trial court's dismissal, claiming that (1) the board's decision was not supported by substantial evidence, (2) the trial court's initial order remanding the proceeding for consultation between the board and the commission was improper, and (3) the remand proceedings deprived the plaintiffs of their right to fundamental fairness. Assuming without deciding that the Superior Court's remand order was improper, we nevertheless conclude that there was substantial evidence in the 2019 record to support the board's original decision. Accordingly, we affirm the judgment of the trial court dismissing the plaintiffs' appeal and need not decide whether the remand proceedings deprived the plaintiffs of their right to fundamental fairness.

I

The following facts and procedural history are relevant to our resolution of this appeal. Grace Farms owns a 79.31 acre parcel of land at 365 Lukes Wood Road in New Canaan (property), which is abutted on its eastern boundary by the plaintiffs' property at 1328 Smith Ridge

Road. In 2007, the commission first approved a special permit authorizing the use of the property as a religious institution and permitting the construction of buildings and related site improvements. The special permit was subsequently amended with conditions in 2008 and 2013. In 2016, Grace Farms applied to the commission to amend the 2013 special permit to authorize additional principal uses for the property. The commission ultimately approved the application in September 2017, subject to the 2017 special permit, which superseded the prior special permit and imposed 100 enumerated conditions on Grace Farms' use of the property.

In March 2018, Grace Farms sought a zoning permit to conduct interior renovations to the operations center, a building located on the property and referenced in condition thirty of the 2017 special permit. The proposed renovations involved subdividing existing garage and open space to create additional offices, expanding a preexisting office on the second floor, and converting a closet into a bathroom. After the zoning enforcement officer issued the zoning permit for the project on April 4, 2018 (2018 zoning permit), Grace Farms received a building permit to implement the renovations, and, by June 2019, the New Canaan Building Department conducted a final inspection of the renovations and issued a certificate of occupancy.[2]

In July 2019, pursuant to a Freedom of Information Act request; see General Statutes § 1-200 et seq.; the plaintiffs learned of Grace Farms' renovations to the

---

[2] The plaintiffs challenged the issuance of only the 2018 zoning permit and not the building permit or the certificate of occupancy under their theory that, if the board determined that the 2018 zoning permit was improperly issued, then the building permit and the certificate of occupancy would necessarily be revoked. See General Statutes § 8-3 (f) ("[n]o building permit or certificate of occupancy shall be issued for a building, use or structure subject to the zoning regulations of a municipality without certification in writing by the official charged with the enforcement of such regulations that such building, use or structure is in conformity with such regulations or is a valid nonconforming use under such regulations"). We therefore refer only to the 2018 zoning permit throughout this decision.

operations center pursuant to the 2018 zoning permit. The plaintiffs appealed from the issuance of the 2018 zoning permit to the board, arguing that the changes to the operations center were not permitted under conditions six and thirty of the 2017 special permit.[3] Condition six provides that "[t]here shall be no material change of the approved use or intensification of any use unless specifically authorized herein," and condition thirty provides that "[t]he former dwelling on the site located at the main entrance is hereby approved to house the [o]perations [c]enter for security and other administrative operations for the property . . . . The building shall not otherwise be rented for dwelling or commercial purposes."

The board met three times on the matter: a public hearing on September 19, 2019; a public hearing on October 7, 2019; and a regular meeting on November 4, 2019. At the September and October public hearings, the board reviewed exhibits introduced by the parties and heard testimony from the plaintiffs, the plaintiffs' counsel, and Grace Farms' counsel. At the November meeting, the board, in a four to one vote, denied the plaintiffs' appeal.

The plaintiffs timely appealed the board's decision to the Superior Court pursuant to General Statutes §8-8 (b), claiming that the board's decision violated the conditions of the 2017 special permit and was not supported by evidence in the record. The Superior Court permitted Grace Farms to intervene as a defendant because it was the owner of the property and the holder of the 2018 zoning permit at issue. Instead of ruling on the merits of the plaintiffs' appeal, the trial court, *Hon. Marshall K. Berger, Jr.*, judge trial referee, remanded the matter to

---

[3]Grace Farms did not publish notice of the 2018 zoning permit, the building permit, or the certificate of occupancy, as required by General Statutes §8-3 (f) and does not, therefore, challenge the timeliness of the plaintiffs' appeal. See General Statutes §8-7 ("[a]n appeal may be taken to the zoning board of appeals by any person aggrieved . . . and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof").

the board, directing it to consult with the commission. The trial court explained that the commission issued the 2017 special permit, but the zoning enforcement officer, not the commission, approved the 2018 zoning permit and initially determined that Grace Farms' proposed renovations were consistent with the 2017 special permit. Consequently, the plaintiffs' challenge to the issuance of the 2018 zoning permit required the board to interpret the conditions of the 2017 special permit without knowing whether the commission would have viewed the renovations as an "intensification" thereunder. The trial court thus reasoned that the commission was the proper entity to interpret the 2017 special permit and remanded the matter for the board to consult with the commission and to review its decision after consideration of the commission's determination.

Based on the trial court's remand decision, the board drafted a series of questions to clarify the meaning of the 2017 special permit and, after deliberation, voted to send these questions to the commission. The commission held a hearing on September 20, 2021, to address the board's questions. During this time, other neighbors owning land adjacent to the property moved to intervene in the proceedings, but the trial court denied their motion. See *Markatos* v. *Zoning Board of Appeals*, 346 Conn. 277, 283, 288 A.3d 1024 (2023). The neighbors appealed the denial, and the commission decided to defer its response to the board's questions until after that appeal was resolved. Following our decision in *Markatos*,[4] in which this court upheld the denial of the neighbors' appeal, the commission reconvened in September 2023 and adopted a resolution stating in relevant part: "The [c]ommission agrees with the findings and interpretation of the [board] that the proposed activities were within

[4]In *Markatos* v. *Zoning Board of Appeals*, supra, 346 Conn. 280, we addressed whether the trial court had abused its discretion in denying the neighbors' motion to intervene in the appeal of the board's 2019 decision. We affirmed the judgment of the trial court, concluding that the neighbors' motion was untimely and properly denied on its merits. Id., 285, 287 and n.7.

the parameters of the [2017] special permit and a building permit and [the 2018] zoning permit were properly issued for such activities . . . [and] that changes in location of approved activities that do not increase the size of any building, do not require additional parking, and do not change the nature of the approved activities are permitted under the [2017] special permit." The board then met in October 2023 to consider the commission's resolution. The board concluded that the commission's input confirmed its original decision and, in a formal resolution, again denied the plaintiffs' challenge to ths issuance of the 2018 zoning permit. The board provided three reasons for its decision: (1) it had previously found in 2019 that the proposed work from the 2018 zoning permit "did not constitute a material change or intensification of use," (2) "[r]econfiguring existing interior space and relocating existing functions onsite" was not a material change of the permitted use, and (3) "no additional parking needs were created."

After the remand proceedings concluded, the court, *Budzik*, *J.*, rendered judgment dismissing the plaintiffs' appeal, concluding that there was substantial evidence in the record to support the board's October 2023 decision in which the board concluded that reconfiguring existing interior space and relocating existing functions was not a material change of the approved use established by the 2017 special permit and that the issuance of the 2018 zoning permit did not result in an intensification of use. The Appellate Court subsequently granted the plaintiffs' petition for certification to appeal from the trial court's judgment, and we transferred the appeal to this court. See General Statutes § 51-199 (c); Practice Book § 65-1A.

## II

## A

The plaintiffs first claim that the trial court erred when it remanded the matter for a consultation between the board and the commission. They argue that the trial court had an obligation in 2021 to either sustain or dismiss the

appeal. Because the trial court instead remanded the matter, the plaintiffs argue that the trial court incorrectly relinquished its responsibility to determine whether the board's decision was supported by substantial evidence. In response, the board and Grace Farms argue that, although the remand order may not have been the best practice, it nevertheless was harmless in the present case because the board reached the same decision before and after the remand.[5]

The 2019 record contains Grace Farms' applications for the 2018 zoning permit, the building permit and the certificate of occupancy. Attached to these applications are floor plans depicting the renovations, detailed descriptions of the proposed improvements, and various, required municipal authorizations. The 2019 record also includes the transcripts of the public hearings in addition to the various memoranda and exhibits submitted by both parties for consideration by the board during the public hearings. The difference between the 2019 record and the record before Judge Budzik (2023 record) is that the 2023 record includes the agendas, transcripts, memoranda and decisions generated from the meetings of the commission and the board during the remand proceedings, including the commission's 2023 resolution.[6] According

[5]Grace Farms also argues that the plaintiffs' claim is unreviewable because the plaintiffs induced the alleged error when they suggested to the trial court that the board consult with the commission and convinced the trial court to order the remand. We disagree. As counsel for Grace Farms acknowledged at oral argument before this court, Judge Berger initially suggested remanding the matter, but the plaintiffs never specifically stated that they wanted Judge Berger to do so. In recognition of this, counsel for Grace Farms argued that the plaintiffs induced the error because they "acquiesce[d]" to Judge Berger's suggestion and took "full advantage" of the remand proceedings. We are not convinced that the plaintiffs' acquiescence or participation rises to the level of induced error. Cf. *Clearview Electric, Inc.* v. *Public Utilities Regulatory Authority*, 354 Conn. 347, 356, 354 A.3d 227 (2026).

[6]The 2023 record also contains materials prepared by the plaintiffs that they sought to present during the October 2023 meeting. During the October 2023 meeting, however, the members of the board agreed to review the plaintiffs' appeal solely based on the evidence introduced in the 2019 hearings and the commission's 2023 resolution.

to the plaintiffs, it is the commission's 2023 resolution resulting from the remand that improperly influenced the board's second denial of their challenge to the issuance of the 2018 zoning permit. During oral argument before this court, both the plaintiffs' counsel and Grace Farms' counsel agreed that, in the event that we determine the trial court's remand was improper, the dispositive issue on appeal is whether substantial evidence existed in the 2019 record to support the board's original decision. Based on the position of the parties, we assume without deciding that the remand was improper. We conclude, however, that there was substantial evidence in the 2019 record to support the board's original decision and, consequently, affirm the trial court's judgment dismissing the plaintiffs' appeal.

B

We begin with our well established standard of review in zoning matters. Issues involving the interpretation of zoning regulations are questions of law over which our review is plenary. See, e.g., *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 665, 894 A.2d 285 (2006). "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission]. . . . The question is not whether the [reviewing] court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached." (Internal quotation marks omitted.) *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 453, 853 A.2d 511 (2004). "The substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict

when the conclusion sought to be drawn from it is one of fact for the jury." (Internal quotation marks omitted.) *McLoughlin* v. *Planning & Zoning Commission*, 342 Conn. 737, 752, 271 A.3d 596 (2022). When a zoning board does not give a reason for its decision, "the [reviewing] court must search the entire record to find a basis for the [board's] decision . . . ." (Internal quotation marks omitted.) *Rapoport* v. *Zoning Board of Appeals*, 301 Conn. 22, 34, 19 A.3d 622 (2011); see also *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, 352 Conn. 1, 22 n.10, 334 A.3d 972 (2025) (when zoning commission fails to articulate factual findings to support its decision, reviewing court must search entire record for basis to support decision). This is because the "conduct of municipal land use agencies carries a strong presumption of regularity," and, therefore, "[i]f any reason culled from the record demonstrates a valid factual basis, then the decision of the commission must be upheld." (Emphasis omitted; internal quotation marks omitted.) *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, supra, 21–22 n.10. When "the plaintiffs' appeal to the trial court is based solely on the record, the scope of the trial court's review of the board's decision and the scope of our review of that decision are the same." (Internal quotation marks omitted.) *Mayer-Wittmann* v. *Zoning Board of Appeals*, 333 Conn. 624, 639, 218 A.3d 37 (2019).

In their initial materials challenging the issuance of the 2018 zoning permit, the plaintiffs articulated three reasons why the board should deny the issuance of the 2018 zoning permit: (1) the 2018 zoning permit application contained factual inaccuracies, (2) the 2018 zoning permit authorizing renovations constituted a material change or an intensification of use at the operations center in violation of condition six of the 2017 special permit, and (3) the renovations were designed to provide office space for the UNCHAIN Foundation (Unchain)[7] in violation of conditions six and thirty of the 2017 special

[7] Unchain was a nonprofit organization established to educate the public about human trafficking and to encourage transparency in trade supply chains. Unchain dissolved in December 2019.

permit. During the September 2019 public hearing, the plaintiffs' counsel acknowledged that the factual inaccuracies argument was not material to the board's evaluation of their challenge to the issuance of the 2018 zoning permit.

At a meeting in November 2019, the board denied the plaintiffs' challenge in a four to one vote. The board did not issue a written resolution explaining the decision or articulate the basis for its decision on the record.[8] As a result, we must search the 2019 record to determine whether there is a factual basis to support the board's denial of the plaintiffs' challenge.

In searching the 2019 record, it is evident that the plaintiffs challenged the approval of the 2018 zoning permit on the ground that it violated conditions six and thirty of the 2017 special permit and that the board's denial of that challenge was predicated on its conclusion that those conditions did not prohibit Grace Farms from making the renovations approved in the 2018 zoning permit. We thus turn to those conditions to discern their meaning and whether there is substantial evidence in the 2019 record to support the board's decision that those conditions did not prohibit Grace Farms from making the approved changes.

We begin our analysis with condition six of the 2017 special permit, which, as we have explained, provides that "[t]here shall be no material change of the approved use or intensification of any use unless specifically authorized herein." The phrase "material change" and the term "intensification" are not defined in either the 2017 special permit or the New Canaan Zoning Regulations. See generally New Canaan Zoning Regs. Accordingly, we construe those terms according to their commonly approved

---

[8]The board published a notice that stated: "RESOLVED, that the appeal of Amy E. Souchuns, Hurwitz, Sagarin, Slossberg & Knuff, LLC, Authorized Agent for [Markatos] and [Holme], owners, 1328 Smith Ridge Road, appealing the issuance of a Zoning Permit, Building Permit & Certificate of Occupancy outlined in a letter dated July 24, 2019, for property located in the Four Acre Zone (Map 41 Block 38 Lot 77) the appeal is denied."

meaning.[9] See, e.*g.*, *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 717, 960 A.2d 1018 (2008). Under its common meaning, a "material change" is a change that is significant in nature. See Black's Law Dictionary (12th Ed. 2024) pp. 1166–67 (defining "material" as "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential"). In this context, "nature" refers to the inherent quality or character of something. See id., p. 1235 (defining "nature" as "[a] fundamental quality that distinguishes one thing from another; the essence of something"). As to the term "intensification," although Black's Law Dictionary does not define it, contemporary dictionaries have generally defined it as becoming more intense or growing stronger. See, e.*g.*, Merriam-Webster's Collegiate Dictionary (12th Ed. 2026) p. 837 ("to become intense or more intensive: grow stronger or more acute"). In sum, and when read as a whole, the plain language of condition six contemplates an inquiry into whether there has been either (1) a significant change in the character of the approved use, or (2) an increase or strengthening in the degree of any use.[10] These terms and corresponding limitations in condition six align with fundamental principles of land use that, "[w]hen a property owner or holder of a special permit wants to substantially intensify the use for which the special permit has been granted, it must obtain an additional or amended special permit in accordance with the provisions of the zoning regulations." D. Merriam, 9

[9]This approach is consistent with the New Canaan Zoning Regulations, which provide that words not defined in the zoning regulations shall be interpreted by the commission after consulting one or more sources, including Black's Law Dictionary and a comprehensive general dictionary. See New Canaan Zoning Regs., art. 2, § 2.1 (C).

[10]We observe that condition six of the 2017 special permit prohibits both material changes in "the approved use" and the "intensification of any use . . . ." Because the plaintiffs' challenge only alleged changes to an approved use—namely, the use of the operations center for security and administrative purposes—which necessarily also constitutes "any use," we need not delineate the full scope of condition six or determine what other uses of the property it may also restrict.

Connecticut Practice Series: Land Use Law and Practice (2026) § 5:4, p. 226.[11]

The plaintiffs, focusing primarily on the term "intensification," argue against this interpretation. The plaintiffs contend that, because "intensification" is a term of art applied to assess a change to a nonconforming use, we should import that same "concept" in the present case. Grace Farms, by contrast, contends that it would be "nonsensical to transplant such a meaning when, as here, the word is used to define an activity level so significant as to become meaningful" to the intensity of Grace Farms' operations. (Emphasis omitted.) We agree with Grace Farms.

A specially permitted use and a nonconforming use are fundamentally distinct concepts in land use law. See, e.g., *Pfister* v. *Madison Beach Hotel, LLC*, 341 Conn. 702, 722, 267 A.3d 811 (2022). A special permit authorizes a property owner to use land in a manner expressly permitted by the zoning regulations; a nonconformity, by contrast, is a use, building, or structure prohibited by the zoning regulations but allowed because

[11]Although this court has not articulated a standard for determining, when a special permit is silent, whether a proposed change of a specially permitted use requires additional approval, condition six of the 2017 special permit closely resembles a standard developed by the Rhode Island Supreme Court and subsequently applied by trial courts in Connecticut. In *Warner* v. *Board of Review*, 104 R.I. 207, 209, 243 A.2d 92 (1968), the court considered whether the holder of a special permit authorizing a single apartment building could construct three additional apartment buildings on the same property without obtaining an additional or amended special permit. In resolving that issue, the court employed a two part inquiry, asking (1) whether the proposed use was "of the same character" as the use authorized by the original special permit, and (2) whether the proposed use would "substantially intensify" the previously approved use. Id., 211. Connecticut trial courts have relied on the *Warner* framework when evaluating whether changes to a specially permitted use require an amendment to the existing special permit. See *Drouin* v. *Planning & Zoning Commission*, Docket No. 552981, 2003 WL 965142, *2 (Conn. Super. February 25, 2003); *Carlson* v. *Planning & Zoning Commission*, Superior Court, judicial district of New London, Docket No. 084384 (September 3, 1986) (1 C.S.C.R. 715, 716).

of its existence at the time the regulations prohibiting such use, building, or structure were adopted. See, e.g., *Municipal Funding, LLC* v. *Zoning Board of Appeals*, supra, 270 Conn. 453; *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 710, 535 A.2d 799 (1988). Because a nonconformity is a vested right that cannot be enlarged, our cases distinguish between the "permissible intensification" and the "impermissible expansion" of such a use. **(**Emphasis omitted.**)** *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, supra, 352 Conn. 15. In that context, whether a change constitutes a permissible intensification or an impermissible expansion turns primarily on three factors identified in *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 589 A.2d 351 (1991)—"the extent to which the current use reflects the nature and purpose of the original use"; "any differences in the character, nature and kind of use involved"; and "any substantial difference in effect [on] the neighborhood . . . ." Id., 332.

Although the plaintiffs urge us to import the meaning of "intensification" from the law governing nonconforming uses into condition six of the 2017 special permit, the term "intensification" in the nonconforming use context does not admit of a precise definition. As we explained, whether a change to a nonconforming use is permissible is generally determined by applying the three part test set forth in *Zachs*. See id. The plaintiffs nevertheless contend that, in the nonconforming use context, an "intensification" is merely a "modest" or "minor" change, and that condition six therefore prohibited even a minor change to the use of the operations center.

Aside from the plaintiffs' failure to identify anything in the record indicating that, when the commission adopted condition six as part of the 2017 special permit,[12] it intended to import the concept of "intensification"

---

[12]Although the plaintiffs refer to a report prepared by a third-party consultant to support their position, that report neither uses the term "nonconforming use" nor suggests that "intensification" should be understood in that manner. Indeed, comments by the town attorney during the 2019 hearing reflect that the use of the term "intensification" in the

from the nonconforming use context, their construction cannot be reconciled with the text of condition six itself. Recall that condition six provides that there shall be "no material change of the approved use or intensification of any use unless specifically authorized herein" and that the commission expressly approved Grace Farms' use of the operations center "for security and other administrative operations for the property . . . ." If "intensification" were construed to prohibit every minor or modest change to any use, as the plaintiffs contend, the separate prohibition against a "material change of the approved use" would serve no independent function. Under the plaintiffs' reading, any change to an approved use—whether material or immaterial— would already constitute a prohibited "intensification of *any* use," rendering the phrase "material change of the approved use" superfluous. (Emphasis added.) Cf. *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 653 ("[w]henever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void, or insignificant"). We therefore decline to adopt the plaintiffs' interpretation.[13]

C

With this as our backdrop, we turn to the 2019 record to determine whether there is substantial evidence to support the board's decision, namely, that the 2018 zoning permit did not result in a material change (a change in character) or an intensification (an increase or strengthening in the degree) of the use of the operations center, in violation of condition six of the 2017 special permit. The applications submitted by Grace Farms for the 2018 zoning permit describe the proposed renovations as "adjustments . . . to revise allocated office space," and

present case was "unfortunate" because it has a different connotation in the context of a nonconforming use than in the 2017 special permit.

[13]We note that the board was addressing only the scope of a permitted use, which, by definition under the New Canaan Zoning Regulations, excludes any nonconforming uses. See New Canaan Zoning Regs., art. 2, § 2.2 (defining "use, permitted" as "[a] use allowed by these Regulations, but specifically excluding any nonconforming use").

a memorandum from the town planner characterizes them as "in sync with the conversion of the space into an [o]perations [c]enter for security and administrative operations." The permit from the town's health department reflected that its approval was based on the representations that the project was for "office space only" and that any deviation would have required a reapproval of the application. Finally, Grace Farms' counsel represented to the board at the public hearing that the use of the operations center would not change. He explained, during questioning by the board members, that the proposed renovations were designed to provide space for Grace Farms' Justice Initiative, its general counsel, its accounting department, and its safety staff. As such, based on the representations by Grace Farms' counsel and the other evidence before the board, there was sufficient evidence for the board to conclude that the issuance of the 2018 zoning permit did not change the character of the approved use of the operations center and, therefore, did not result in any material change. See, e.g., *Loring* v. *Planning & Zoning Commission*, 287 Conn. 746, 758, 950 A.2d 494 (2008) ("[a]n unsworn statement of a party's counsel is competent evidence before a zoning body").

Additionally, there is substantial evidence in the 2019 record to support the board's conclusion that there was no intensification—that is, no increase or strengthening in the degree of the use of the operations center for security and administrative purposes. The evidence before the board reveals that the size of the physical structure of the operations center did not increase. In particular, the application materials and floor plan for the renovation show that the project would not change the building's exterior or its physical footprint. Indeed, all proposed improvements were interior renovations. The applications convey that the operations center had twenty-three occupants and that the proposed renovations would not change either the number of building occupants or employees, or the number of parking spaces. Notably, the materials submitted for the public hearing reflect that one of the proposed improvements—converting closet space into a gender-specific bathroom—was required by

the Connecticut State Building Code because all buildings with occupancy over sixteen people were required to have gender-specific bathrooms. The board's understanding that the renovations did not physically change the building is reflected in the comments of board members John Mahoney and Becky Walsh at the public hearings, who commented that the proposed renovations were consistent with the modern corporate trend of restructuring preexisting office space to place employees in open space cubicles. The evidence before the board showed that there was no increase in any degree to the physical footprint of the operations center, the number of employees occupying the operations center, or the number of parking spaces. Thus, the board reasonably concluded that the renovation authorized by the 2018 zoning permit did not result in an intensification of the use.

Finally, the plaintiffs point to the purported activities of Unchain at the property to argue that the renovations authorized under the 2018 zoning permit violated not only condition six but also condition thirty of the 2017 special permit. Condition thirty provides in relevant part: "The former dwelling on the site located at the main entrance is hereby approved to house the [o]perations [c]enter for security and other administrative operations for the property . . . . The building shall not otherwise be rented for dwelling or commercial purposes." According to the plaintiffs, the renovations of the operations center were intended, at least in part, to provide office space for Unchain, in violation of the use limitations imposed by both conditions. We are not persuaded.

Although there was evidence presented during the 2019 public hearings regarding the relationship between Grace Farms and Unchain, none of the evidence indicates that the relationship resulted in any material change or intensification of the use of the operations center or, more specifically, that the use of the operations center expanded beyond security and operations for Grace Farms.[14] The evidence before the board reflected that

[14]The plaintiffs introduced numerous records related to Unchain, including a timeline of its creation and activities, promotional materials

Unchain's offices were in Stamford and that Unchain did not have any paid employees at the property. Indeed, Grace Farms' counsel represented during the public hearing that Grace Farms had not used the operations center for Unchain at any time. Based on this representation, which the board was permitted to credit, as well as a review of the additional evidence related to Unchain, there was sufficient evidence for the board to conclude that the activities of Unchain at the property did not violate the use limitations of conditions six and thirty of the 2017 special permit. See *Loring* v. *Planning & Zoning Commission*, supra, 287 Conn. 758.

Our review of the 2019 record confirms that there was substantial evidence to support the board's conclusion that the issuance of the 2018 zoning permit did not violate conditions six and thirty of the 2017 special permit. Accordingly, the 2019 record supports the board's decision to deny the plaintiffs' challenge to the issuance of the 2018 zoning permit.[15]

The judgment is affirmed.

In this opinion the other justices concurred.

_____

related to events at the property, attendance records for these events, Internal Revenue Service Form 1023, a certificate of incorporation, and records of its leadership team.

[15]Because we conclude that the board's 2019 decision was supported by substantial evidence without reference to the remand proceedings, we need not address the plaintiffs' contention that those proceedings violated their right to fundamental fairness.